AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

**United States of America**

v.

**LOUJACK CROWDER JR.,**

*Defendant*

Case No. 23-MJ-640-MJP

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about September 28, 2023, in the County of Monroe, in the Western District of New York, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 922(o)(1) | Knowing and unlawful possession of a machinegun |
| 26 U.S.C § 5861(d) | Possession of unregistered firearm |

This Criminal Complaint is based on these facts:

See attached affidavit.

☒ Continued on the attached sheet.

_____
Vincent A. Re, Jr., Task Force Officer
Bureau of Alcohol, Tobacco, Firearms & Explosives

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim.P. 4.1 and 4(d) on:

Date: October 17, 2023

City and State: Rochester, New York

_____
MARK W. PEDERSEN
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

LOUJACK CROWDER, Jr.

Defendant

**23-MJ-640-MJP**

**COMPLAINT AFFIDAVIT**

State of New York  )
County of Monroe  ) ss
City of Rochester  )

I, Vincent Re, affirm to the following facts:

1. I have been a Deputy Sheriff since 2003. Since becoming a Deputy Sheriff, I have worked with federal, state, and local law enforcement officers on numerous investigations involving narcotics trafficking, and firearms offenses, and have assisted in a number of successful investigations of drug distribution networks and firearms trafficking organizations. From 2018 until 2022, I was assigned to the Drug Enforcement Administration (DEA) Task Force in Rochester, NY as a Task Force Officer. There, I was involved in the execution of search and seizure warrants on drug trafficking locations, made arrests for violations of state and federal drug and firearms laws, and authored supporting affidavits in support of said court authorized search and seizure warrants. Furthermore, I have participated in the investigation of numerous drug trafficking conspiracies and cases involving the use of court-authorized interceptions of wire and electronic communications and authored supporting

affidavits in support of said court-authorized interceptions. I am currently assigned to the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) Violent Crimes Task Force and am assigned to the Rochester, NY Field Office as a Task Force Officer. I further state that I am the kind of Task Force Officer as delineated in Title 18, United States Code, Section 3051.

## PURPOSE OF AFFIDAVIT

2. This affidavit is submitted in support of a criminal complaint charging LOUJACK CROWDER, Jr. with violations of Title 18, United States Code, Section 922(o)(1)(unlawful possession of a machinegun), and Title 26, United States Code, § 5861(d) (possession of unregistered firearm).

3. The assertions made herein are based upon my personal knowledge and information I have received through my review of this investigation, including conversations with other law enforcement agents and officers, all of which I believe to be true and accurate. Since this affidavit is being submitted for a limited purpose, I have not included each and every fact that I know concerning this investigation. Rather, I have set forth only those facts that relate to the issue of whether probable cause exists to believe that Loujack CROWDER committed the above-described offenses.

## FACTS ESTABLISHING PROBABLE CAUSE

4. On September 28, 2023, members of the Monroe County Sheriff's Office (MCSO) were dispatched to 46 Bright Oaks Drive, in the Town of Chili, County of Monroe,

Western District of New York, for an apparent family issue regarding the alleged possession of a gun inside the residence. En route, the sheriffs were informed that one of the potential occupants of the residence, Loujack Crowder, Jr., also had a wanted package for a Pittsford, New York burglary and grand larceny allegedly committed on September 4, 2023.

5. Upon arriving at the location, MCSO Deputy Corona knocked at the garage door and observed an elderly female and a young male, later identified as LouJack Crowder, Jr., standing inside the residence. As the elderly female answered the door, she was identified as "L.C.". Upon meeting with LC, she immediately warned the Deputy that she "saw a gun." LC explained she had been arguing with her grandson, Loujack CROWDER, regarding his possession of a firearm in her residence, that he tried to convince her the gun was not real, and that he was now talking "junk" to her.

6. During the initial conversation, Deputy Corona was able to step inside the residence, which allowed Deputy Corona to view a hallway in the residence. The same male identified as Loujack CROWDER was observed standing in the hallway. Upon CROWDER observing Deputy Corona enter inside the residence, CROWDER moved further into the residence. At that point, a loud noise could be heard consistent with a window breaking. Additional officers positioned outside observed CROWDER crash through a window on the eastern front side of the home and begin running from the location. A perimeter was set up and Sheriff Deputies ultimately located CROWDER as he exited a wooded area and attempted to get into an Uber. Investigators began searching the area for any evidence of a handgun that may have been tossed by CROWDER, finding nothing.

7. After securing CROWDER, Deputy Corona returned to speak further with LC. LC stated in sum and substance that her great-grandson (CROWDER) had moved into her house about 6 weeks earlier. She stated that earlier that morning she was cleaning CROWDER's bedroom. During the cleaning, she picked up a cloth bag which was located on a TV stand in his room. According to LC, the bag felt very heavy to her so she looked inside. LC observed a dark colored pistol which had a drum style magazine attached to it, containing numerous rounds. LC then placed the handgun with the drum style magazine back into the bag and immediately went to confront her grandson CROWDER, who was then in the living room. An argument then ensued between CROWDER and LC during which time CROWDER was showing LC a black colored gun, yet alleging the handgun wasn't real. LC stated she knew the gun was real and advised a roommate to call 911 for her. She stated she wanted the gun out of the house.

8. Shortly thereafter, LC agreed to a consent to search of her residence by signing the MCSO consent to search form. At that time, LC took members of MCSO to CROWDER's bedroom. Observed in plain view in CROWDER's bedroom was a Glock .40 caliber 10 round magazine and one loose live round located in a plastic bin. Upon seeing the ammunition, MCSO ceased the search and contacted an investigator to obtain a search warrant for the location.

9. A search warrant for the location was signed by NYS Supreme Court Judge Victoria Argento. Ultimately, Investigators located a Glock 23, gen 4, .40 caliber handgun with serial #AESR397 in a common bathroom vanity accessible to all persons in the residence. In the same vanity, investigators located a fifty (50) round drum magazine

containing thirty-nine (39) live rounds. The handgun was found with one live round in the chamber. The handgun matched the description provided by LC.

10. Upon closer inspection of the handgun, it was determined that it was equipped with a conversion device known as an "auto sear." Based upon my training and experience, I am aware that these "conversion devices" have been designed and created for the sole purpose of converting semi-automatic Glock pistols into fully automatic machineguns. These devices vary by design and appearance but all, when properly installed on a semi-automatic Glock pistol, will allow the firearm to expel more than one projectile by a single pull of the trigger at approximately 1,200 rounds per minute. Installation of these conversion devices is fast and simple, requires no technical expertise, and is completed by removing the polymer slide cover plate on a Glock semi-automatic pistol and replacing it with a conversion device.

11. I also know that these conversion devices are referred to by different names, including but not limited to: "switches," "auto sears," "convertors," "conversion switches," "selector switches," "conversion devices," and "Fire Selector Systems for Glock" (FSSGs). Most importantly, I am aware that post-May 1986, ATF considers Glock conversion devices which cause the firearm to be fully automatic are classified as "machineguns" under 26 U.S.C. § 5845(b).[1]

12. Apart from official military and law enforcement use, Glock conversion devices may only be lawfully possessed by properly licensed Federal Firearms Licensees (FFLs)

---

[1] A "machinegun" is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun . . ." 26 U.S.C. § 5845(b); see 18 U.S.C. § 921(a)(24).

who have paid the appropriate Special Occupational Tax (SOT) required of individuals manufacturing, importing, or dealing in National Firearms Act (NFA) weapons. The knowing and unlawful possession of a machinegun is a violation of Title 18, United States Code, Section 922(o)(1).

## MONROE COUNTY CRIME LAB

13. On October 3, 2023, Monroe County Crime Laboratory Firearms Examiner Richard Hoepfl examined the Glock 23, Gen 4, .40 caliber semiautomatic pistol, bearing serial #AESR397 recovered from 46 Bright Oaks Drive. The pistol was confirmed to be fitted with a full auto switch (conversion device) installed in the rear of the slide and discharges multiple cartridges with a single pull of the trigger. Tests 1-3 were all fired with a single trigger pull. Hoepfl confirmed this by pulling and holding the trigger once, which caused all 3 test rounds to discharge with a single pull of the trigger, causing the firearm to produce a fully automatic discharge of cartridges.

## NATIONAL FIREARMS REGISTRATION AND TRANSFER RECORD CHECK

14. Your affiant is aware through training and experience that certain firearms are subject to restrictions of the National Firearms Act of 1934 ("NFA"). Examples of such NFA firearms include machineguns, short-barreled rifles and short-barreled shotguns. The NFA requires individuals who manufacture, transfer, or possess such weapons to register the weapons in the National Firearms Registration and Transfer Record ("NFRTR"), which is a database maintained and administered by the ATF. If an NFA firearm is not properly registered, it is contraband. Additionally, if a properly

registered NFA firearm is possessed by an unregistered individual, this is also a violation of the NFA.

15. On October 13, 2023, your affiant requested that ATF officials review the NFRTR for CROWDER. The NFRTR records review revealed that CROWDER is not registered to legally possess NFA firearms in the National Firearms Registration and Transfer Record, that the above auto sear (machinegun) is not registered in the NFRTR, and that CROWDER has not and does not hold a Federal Firearms License or a license to manufacture firearms.

## SUBSEQUENT INVESTIGATION

16. On October 2, 2023, MCSO Investigator Steven Thomsen reviewed interior security video from 46 Bright Oaks Drive provided by a relative. The video shows the altercation between LC and Loujack CROWDER, including the moments where CROWDER was observed holding a black Glock in his hand trying to convince LC that the gun was not real.

17. Inv. Steven Thomsen was also made aware that in August 2023, RPD homicide investigator Mario Correia conducted a court-authorized search of a phone belonging to Loujack CROWDER on an unrelated investigation. The phone extraction shows numerous photos of CROWDER in possession of firearms. More importantly, there are several outgoing text messages indicating CROWDER is aware that he is in knowing possession of "switches." dated 7-21-2023 as follows:

    "New Glokk"  "wtb"
    "Built in Switch"
    "We got g23 and 21 too"

18. On August 24, 2023, CROWDER sends a message to "Ricky 5050" stating "We needa get dat switch bakk."

19. CROWDER has also streamed videos on publicly available Instagram messages. The account name is "lillouie_sg". One of the videos obtained by Investigators appears to have been recorded on August 15, 2023, which shows CROWDER and others at a location with several firearms, including rifles. CROWDER is easily identified by the unique tattoos on his neck and above his eyebrow. At one point in the video, a handgun is displayed by a relative of CROWDER and the individual states —"Switchy on the Glock." CROWDER then turns the firearm to the camera and he repeats - "Switchy on the Glock." The relative then turns the camera towards a rifle and takes apart an AR-15 style rifle and pulls out a switch from inside the weapon. The relative then says – "Switchy on the AR piecey, we going fed."

20. On September 5, 2023, Investigators recovered a livestream video posted on his Instagram which shows CROWDER holding a firearm with a large capacity drum attached to it. On September 20, 2023, CROWDER posted as picture on Instagram that shows him with a gun in his waistband.

## CONCLUSION

WHEREFORE, based on the above information, I submit there is probable cause to believe that on September 28, 2023, in the Town of Chili, County of Monroe, in the Western District of New York, the defendant, Loujack CROWDER, violated Title 18, United States

Code, Section 922(o)(1) knowing and unlawful possession of a machinegun and Title 26, United States Code, Section 5861(d) (possession of unregistered firearm).

_____
Vincent Re, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms,
and Explosives

Affidavit for Complaint submitted electronically
by email in .pdf format. Oath administered, and
contents and signature, attested to me as true and
accurate telephonically pursuant to Fed.R.Crim. 4.1
and 41(d)(3) on October 17, 2023.

_____
HON. MARK W. PEDERSEN
United States Magistrate Judge